**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CHARLES PATRICK MAY,** ) | |
| ) | **CASE NO. 4:10CV1533** |
| Plaintiff, ) | |
| ) | |
| v. ) | **JUDGE JOHN R. ADAMS** |
| ) | |
| ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| Commissioner of Social Security, ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff, Charles Patrick May ("May"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying May's claim for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be vacated and the case remanded, pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings consistent with this Report and Recommendation.

**I.  Procedural History**

On February 24, 2005, May filed an application for POD and DIB alleging a disability onset date of October 15, 2003, claiming he was disabled due to back and affective disorders. His application was denied both initially and upon reconsideration.  May timely requested an administrative hearing.

On June 4, 2008, an Administrative Law Judge ("ALJ") held a hearing during which May, represented by counsel, testified. Tania Shullo, an impartial Vocational Expert ("VE"),

also testified. On June 23, 2008, the ALJ found May was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On December 4, 2010, May filed a motion for remand based upon sentence six of 42 U.S.C. § 405(g), arguing that there was new and material evidence from a psychological evaluation dated July, 2010.[1] (Doc. No. 16.) The Commissioner filed a response. (Doc. No. 22.) For the reasons set forth below, it is recommended that May's sentence six motion for remand be denied.[2]

## II. Evidence

### Personal and Vocational Evidence

Age 37 at the time of his alleged disability onset date, May is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563. May has a high school education and past relevant work as a construction worker/painter (heavy/semi-skilled). (Tr. 18, 19.)

### Medical Evidence - Degenerative Disc Disease

#### History

In 1994, May underwent L5-S1 surgery. (Tr. 747.) Cervical and thoracic spine x-rays taken on September 2, 2003, revealed mild to moderate anterior vertebral body spurring at the

---

[1]Sentence six of 42 U.S.C. § 405(g) states in pertinent part as follows:

The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .

If a sentence six remand motion is granted, the district court retains jurisdiction over the case pending further development by the agency. *Easterwood v. Barnhart*, 338 F.Supp.2d 1245 (D. Kan. 2004)

[2]May's argument in his motion to remand was incorporated by reference in his brief on the merits as to whether the ALJ properly evaluated May's head injuries and possible organic brain impairment. (Doc. No. 18 at 20). The Court, therefore, will address May's argument below.

thoracic level with scattered disc space narrowing, especially at the lower third of the thoracic region. (Tr. 609.)

### *Chiropractic Care*

From September 2, 2003, until March 4, 2004, May was treated by Thomas Szalay, D.C., Dr. Szalay reported that May had severe muscle spasm and tenderness in the thoracic region radiating into and around the chest and lateral ribs. (Tr. 141.) He further reported a limited range in the thoracic spine and tenderness causing limitations in the movement of the upper extremities, especially over head lifting. *Id*. He noted that pulling/pushing/lifting with the upper extremities caused increased pressure and nerve compression. *Id*. He described May's gait as "forward lean, hunch backed." *Id.*

### *Magnetic Resonance Imaging ("MRI") Results*

On March 8, 2004, a thoracic MRI indicated:

> 1) Uniform slight decreased vertebral body height of T7 and T8 with anterior compression changes at T9, T10 and T11. There is resultant kyphosis through these levels.
>
> 2) To the left of midline and virtually involving every level through the thoracic spine image in the axial projection, there are varying degrees of bony degenerative change, likely related to spondylosis which results in rightward displacement of the thecal sac and spinal cord. Also noted is slight leftward rotation of the vertebral bodies at these levels. Etiology is uncertain but is likely congenital and may be related to alteration in the thoracic cage and underlying scoliosis.
>
> 3) At the level of the T7-8, T8-9 and T10-11 demonstrate disc protrusions which efface the ventral thecal sac and deform the ventral surface of the spinal cord. Lesser degree of disc protrusion is noted at the T5-6 level.
>
> 4) Central canal stenosis of T8-9.

(Tr. 607-608.)

A second MRI of May's thoracic spine was taken on April 23, 2007. (Tr. 604.) The results indicated:

> 1) Moderate compressions of T7 through T11 vertebral bodies. These compressions are old. This is very unusual for patient's age.
>
> 2) Marked degenerative arthritis from T8 through T12, characterized by formation of large anterior spurs. This is also very unusual for patient's age.
>
> 3) Herniated discs at multiple levels, as described. Out of all the levels described

3

above, herniated discs at T7-8 and T8-9 appear to be the most significant finding.

4) Postoperative changes within inferior end-plates of T8 and T10, with signal abnormality in adjacent soft tissues on right side.  As discussed above, this is also postoperative change.

5) No evidence of bone destruction, osteomyelitis or disc space infection.

(Tr 604-605.)

### *Treating Physician*

Between November, 2003, and April 30, 2010, May was treated by George Ellis, M.D., for hypertension, diabetes mellitus type II (uncontrolled), weight problems, and fatigue.  (Tr. 436-556, 683-715.)  Dr. Ellis noted that May's past medical history included chronic back pain affecting L5-S1 since 1994 (Tr. 440), and that May consistently reported chronic back pain at his visits.  (Tr. 432-622; 682-715.)

### *Orthopedic Surgeon*

Henry Bohlman, M.D., an orthopedic surgeon, examined May on March 31, 2004, and reviewed the MRI taken that month, noting "a very noticeable disc protrusion at T8-9, which is flattening the spinal cord and also at T10-11 he has very significant spinal cord deformity by a central disc protrusion, which makes the spinal cord look like a kidney bean."  (Tr. 170.)  In May, 2004, Dr. Bohlman performed an anterior transthoracic partial resection of the vertebral bodies and disk of T8-9 and T10-11.  (Tr. 123.)  He prescribed MS Contin and Lortab for pain.  (Tr. 167.)

In September, 2004, May returned to Dr. Bohlman still complaining of pain.  The doctor noted that neurologically, May was normal and expressed: "I do not think there is any reason for him to be having such chronic pain at this point in time following surgery.  Therefore, I think, as I explained to he [sic] and his wife, that he is still going to experience pain as long as he is chemically dependent on narcotics."  (Tr. 166.)

In August, 2007, Dr. Bohlman again noted that May was neurologically intact and there was no evidence of spinal cord compression.  (Tr. 623.)  He further noted that the April, 2007, MRI shows a T7-T8 herniated thoracic disc and that it is "somewhat indenting the spinal cord, but not flattening it." *Id*.  Dr. Bohlman observed that May was "doing a lot of moaning and

groaning and reaction to moving around the room with significant functional overlay and histrionics." *Id.* Dr. Bohlman informed May that he "would never get relief of his pain until he gets detoxified." *Id*. The doctor further noted that he was unwilling to do further surgery. *Id*.

### *Pain Clinic*

In July, 2004, May began treating with Steve L. Sheakoski, M.D., of Pain Associates of Northeast Ohio. (Tr. 262-434.) Dr. Sheakoski first prescribed Kadian 60 m.g. tablets, without relief. (Tr. 381.) He next performed four right intercostal nerve blocks between November 26, 2004, and January 12, 2005. (Tr. 280, 428, 430.) On September 15, 2005, Dr. Sheakoski conducted a nerve root sheath injection/nerve block at T7-T8, T10, on the right. (Tr. 411-412.) In June, 2007, after reviewing the April, 2007, MRI, Dr. Sheakoski noted changes at the T7-T8, T8-T9 levels and recommended surgical reevaluation, or, in the alternative, that May should be considered an "intrathecal pump pain medication candidate." (Tr. 263.)

### *State Agency Reviewing Doctors*

Robert Norris, M.D., a state agency reviewing physician, completed an assessment of May's physical condition in July, 2005. (Tr. 194-201.) Dr. Norris concluded that May's complaints of disabling pain were not credible as May's allegations were "inconsistent with the medical evidence and inconsistent with what he tells different treating sources." (Tr. 199.) Dr. Norris determined that May was capable of carrying or lifting up to 50 pounds occasionally, carrying or lifting up to 25 pounds frequently, standing or walking for about six hours in an eight-hour day, and sitting for about six hours in an eight-hour day. (Tr. 195.) On December 30, 2005, E. S. Villanueva, M.D., affirmed Dr. Norris' findings. (Tr. 201.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

May was insured on his alleged disability onset date, October 15, 2003, and remained insured through the date of the ALJ's decision, June 23, 2008. (Tr. 11.) Therefore, in order to be entitled to POD and DIB, May must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found May established a medically determinable, severe impairment, due to degenerative disc disease status post thoracic spine surgery, major depressive disorder, and substance abuse disorder; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. May was found capable of performing his past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work and simple, routine tasks. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that May is not disabled.

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

**V. Standard of Review**

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards, as promulgated by the regulations, or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

7

## VI. Analysis

May claims the ALJ erred by: (1) failing to address May's head injuries which may have resulted in an organic brain impairment; (2) finding that he has a high school education and is able to communicate in English when he has at most, a marginal education, or is illiterate; (3) failing to address May's bipolar disorder; (4) failing to consider May's obesity as a severe impairment; (5) relying on the VE's testimony in response to an incomplete hypothetical question; and, (6) failing to call a medical expert to testify as to whether May equaled or met Listing 1.04.[4]

As to May's first argument, he filed a motion for a sentence six remand based on new and material evidence regarding his reported history of multiple head injuries and current problems with memory and cognitive functioning. (Doc. No. 16.) Mary Newell Waller, Ph.D., evaluated May in July, 2010, two years after the ALJ's decision. She recommended that a complete neuropsychological evaluation be done to address the potential organic brain impairment. (Doc. No. 17.) May contends that based on this new evidence, remand is necessary. The Commissioner argues that the consultative psychologist's report is not material and May has not established good cause for failing to present such evidence during the administrative proceeding. (Doc. No. 22.)

A sentence six remand is appropriate only where the evidence presented is new and material, and good cause existed for not presenting the evidence in the prior proceeding. 42 U.S.C. § 405(g). Evidence is new only if it was not in existence or available during the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is "material" for purposes of sentence six remand if it is time-relevant, *i.e.*, relates to the period on or before the date the ALJ rendered his decision. *See, e.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). Also, evidence is "material" only if there is a reasonable probability that the ALJ would have reached a different conclusion if the evidence had been

---

[4]May's brief, at times, refers to Listing 1.03, but it is clear his argument concerns Listing 1.04 (Disorders of the Spine) as he attached Listing 1.04 as Exhibit B. (Doc. No. 18-2.)

considered. *Foster*, 279 F.3d at 358. Good cause exists where the failure to present the evidence during the administrative proceeding was reasonably justified. *Foster*, 279 F.3d at 357. The claimant bears the burden of establishing that remand is appropriate. *Id*.

The Sixth Circuit has observed that "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004); *Walton v. Astrue*, – F.Supp.2d –, 2011 WL 198009, *7 (N.D. Ohio Jan. 18, 2011). A claimant must provide medical evidence of his impairments "during the time you say that [he is] disabled." 20 C.F.R. § 404.1512(c). The crucial date in a social security case is the "date [that] claimant's insured status expired." *Barnett v. Sec'y of Health & Human Servs.*, No. 86–3111, 1987 WL 36614, at *3 (6th Cir. 1987). Medical evidence dated after a claimant's expiration of insured status is only relevant to a disability determination where the evidence "relates back" to the claimant's limitations prior to the date last insured. *Id*. The related back evidence is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date. *See* 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations.").

Although May's psychological evaluation performed by Dr. Waller more than two years after the ALJ's decision is new evidence, May has not established that it is material – relevant and probative – to the extent that it would change the result, nor has he set forth good cause for failing to submit it at the administrative level. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 485 (6th Cir. 2006). Furthermore, May was insured through December 31, 2008. (Tr. 11.) The evaluation was not conducted until July, 2010, eighteen months after his insured status expired. May has not argued that Dr. Waller's report "relates back" or is reflective of May's limitations prior to December 31, 2008. The Court, therefore, recommends that May's motion to remand based on sentence six be denied. (Doc. No. 16.)

May next argues that the ALJ erroneously found May has a high school education and is able to communicate in English, when May is at most marginal, and probably illiterate. (Doc.

No. 18 at 20-21.)  The Commissioner asserts that the ALJ reasonably determined that May has a high school education.  (Doc. No. 21 at 9.)  Indeed, May does not dispute that he graduated from high school.  Instead he argues that when he was seven years old, he was run over by a car causing brain damage; that he was almost 20 years old when he graduated from high school; and, that he does not read well.  (Doc. No. 18 at 20-21.)  The ALJ noted that May was able to communicate in English.  (Tr. 19.)  Moreover, May successfully worked for approximately eighteen years without any problems regarding his inability to read.  Therefore, the Court finds that there was substantial evidence to support the ALJ's finding that May has a high school education and is able to communicate in English.

May further contends that the ALJ erred at the second step by not finding his bipolar disorder and obesity to be severe impairments.  These impairments, however, were not at issue in the proceedings below.  Moreover, 20 CFR § 404.1512(a) required May to "furnish medical and other evidence that [the Social Security Administration] can use to reach conclusions about his medical impairment(s) and ... its effect on his ability to work on a sustained basis."  *See* 20 CFR § 404.1512(a).  May did not satisfy this requirement with respect to these claims.  Even though the record reflects that May was diagnosed with bipolar disorder and obesity, May has not demonstrated that there were any functional limitations ascribed to the conditions. He bears the burden of establishing that these conditions were severe impairments.  *Murphy v. Sec'y of Health & Human Servs*., 801 F.2d 182, 185 (6th Cir. 1986) ("Plaintiff must prove that the impairment is severe and that it significantly limits his ability to perform basic work activities."); 20 C.F.R. § 404.1520.  Therefore, the ALJ had no obligation to address May's obesity or bipolar disorder.  *See Cranfield v. Comm'r of Soc. Sec.*, 79 Fed. Appx 852, 857 (6th Cir. 2003).

At the third step in the disability evaluation process, a claimant will be found disabled if his impairment meets or equals one of the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec*., 381 Fed. Appx. 488, 491 (6th Cir. 2010).  The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age,

10

education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3). A claimant must satisfy all of the criteria to "meet" the listing. *Id.*; *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). However, a claimant is also disabled if his impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1520(a)(4)(iii); *Turner*, 381 Fed. Appx. at 488, which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a). An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *Cf. Lawson v. Comm'r of Soc. Sec.*, 192 Fed. Appx. 521, at *7 (6th Cir. 2006) (upholding ALJ who "compar[ed] the medical evidence of Lawson's impairments with the requirements for listed impairments contained in the SSA regulations"); 30 Fed. Proc., L.Ed. § 71:234. In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision. *See Marok v. Astrue*, 2010 WL 2294056, *3 (N.D. Ohio Jun. 3, 2010).

Here, the ALJ found physical and mental impairments at step two: degenerative disc disease and depressive and substance abuse disorders. He then went on to step three to determine whether May had an impairment or combination of impairments that met or medically equaled one of those listed. He began with his conclusion: "The claimant's impairments, considered both singly and in combination, do not meet or medically equal the requirements of any of the impairments set forth in Section 1.00 of Appendix 1, dealing with the musculoskeletal system, Section 12.04 of Appendix 1, dealing with affective disorders, or Section 12.09 of Appendix 1, dealing with substance abuse disorders.[5] (Tr. 13.) The ALJ then thoroughly

---

[5]According to the regulations, if there is a depressive disorder, then Listing 12.09 is analyzed under Listing 12.04. 20 C.F.R. Listing 12.09(B).

11

analyzed the "Affective Disorders" Listing, Subsection 12.04, 20 C.F.R. pt. 404, Subpt. P, App. 1, setting out in a full-page the assessment of May's mental impairments. He compared May's medical history and testimony to the Listing, assessing his "activities in daily living," "social functioning," "concentration, persistence or pace," and "decompensation," which tracks the criteria in that section. Such an analysis and conclusion regarding May's mental impairment meets the substantial evidence standard.

However, once the ALJ completed his analysis under section 12.04, he simply went on to the next step in the five-step analysis—determining residual functional capacity. No analysis whatsoever was done as to whether May's physical impairment met or equaled a Listing under section 1.00, despite his introduction concluding that they did not.

Section 1.00 is the subsection applicable to musculoskeletal listings. Specifically, May claims he qualifies as disabled under subsection 1.04, Disorders of the Spine. It reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal code. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test.... or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. These listings are only examples of common musculoskeletal disorders that are severe enough to prevent a person from engaging in gainful activity. Medical equivalence can be found in three ways: (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed

impairment that is "at least of equal medical significance" to a listing impairment; or (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality.  20 C.F.R. § 404.1526.

May first raised the issue that he equaled a listing at the hearing before the ALJ, and then raised the issue again, although in a one-sentence footnote in his brief, referring to the argument raised before the ALJ.  (Doc. No. 18 at 24; Tr. 753-754.)  The Commissioner argues that May has abandoned this argument as conclusory objections and perfunctory arguments should be deemed waived.  *See Rice v. Comm'r of Soc. Sec.*, 169 Fed. Appx. 452, 454 (6th Cir. 2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (*quoting McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)).  However, this rule is prudential and not jurisdictional, *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999), and the requirement for specific objections may be excused "in the interest of justice."  *Kelly v. Withrow*, 25 F.3d 363, 366 (6th Cir. 1994); *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165, *3 (6th Cir. Apr. 1, 2011).  The Sixth Circuit has previously considered whether certain impairments meet or equal a listing, even though that issue had not been raised.  *See Gwin v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 102 (6th Cir. 2004).

Ultimately, the ALJ erred by failing to analyze May's physical condition in relation to the Listed Impairments.  Put simply, he skipped an entire step of the necessary analysis.  He was required to assess whether May met or equaled a Listed Impairment, but did not do so.

The Commissioner contends that the evidence does not establish that May's back condition satisfied the criteria for Listing 1.04.  (Doc. No. 21 at 12.)  The Commissioner refers to evidence in the record in support of his position, *i.e.*, that May was neurologically intact and did not suffer from sensory or reflex loss (Tr. 165-70, 436-556, 623, 683-725); that his strength, range of motion, reflexes, and gait were normal and intact (Tr. 165-70, 436-556, 683-725); and, that no treating, consulting, or reviewing physician indicated that May's back condition met or equaled Listing 1.04.  (Doc. No. 21 at 13.)  Unfortunately, the ALJ included no such analysis.  Moreover, as this Court has previously noted, "arguments [crafted by defense counsel] are of no

13

consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("We cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")

The ALJ's error was not harmless, because if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary. 20 C.F.R. § 404.1520(a)(4)(iii). Therefore, if the ALJ had properly analyzed step three, and had found May met Listing 1.04, he would receive benefits regardless of what the ALJ's conclusion would have been at steps four and five. Additionally, in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence May put forth could meet this listing.

May argues that there was evidence of an "indentation" on the spinal cord. (Tr. 753-754.) He relies on evidence from an MRI taken on April 23, 2007. (Tr. 408-409; 604.605.) On September 12, 2007, Al-Amin A. Khalil, M.D., reviewed this MRI and noted as follows:

> There are moderate compressions to T7, T8 and T9, T10 and T111 vertebral bodies. All these compressions are old. This is very unusual for a patient of this age. There is marked degenerative arthritis at these levels characterized by the formation of anterior spurs. This also is very unusual for a patient of this age.
>
> At C5-C6, and C6-C7 there are small herniated discs to the left of the midline. These are causing mild compression of the left side of the spinal cord (image H1 through H5 and I1 through I5).
>
> At T7-T8 there is a herniated disc in the midline and extending toward the right side. It is causing a moderate compression of the spinal cord (images H8-H9, I8-I9.)

(Tr. 620.) Dr. Khalil's diagnosis and assessment were as follows: "patient has most vertebral plasty pain syndrome which is refractory to interventions thus far. * * * [He] is a 41-year old male with significant back pain isolated to the right hand side which is inhibiting his daily activities." (Tr. 621.) The ALJ, however, never discussed Dr. Khalil's diagnosis and assessment

14

of the April, 2007, MRI.[6]  Moreover, Dr. Bohlman noted that the April, 2007, MRI showed indentation of the spinal cord (Tr. 623), and Dr. Sheakoski noted that the same MRI indicated changes at T7-T8 and T8-T9 levels, suggesting that surgery may be necessary.  (Tr. 263.)

The ALJ was required to evaluate this evidence, compare it to Section 1.00 of the Listing, and give an explanation, in order to facilitate meaningful judicial review.  Otherwise, it is impossible to say that the ALJ's decision at step three was supported by substantial evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3rd Cir. 2000); *see also Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165, **2-4 (6th Cir. 2011).  As the Third Circuit explained, "[b]ecause we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning" supporting the determination that the claimant's severe impairments do not meet or medically equal a listed impairment.  *Burnett*, 220 F.3d at 120.  This same analysis applies in the instant case.

May further challenges the ALJ's step four analysis and contends that the ALJ was required to call a medical expert to testify whether May equaled or met Listing 1.04 (spine disorders) and 12.07 (somatoform disorders).  (Doc. No. 18 at 21-24.)  The Court, however, will not address these issues as remand has been recommended on other grounds.  The Court,

---

[6]The ALJ briefly mentions Dr. Khalil's report at step four, the RFC calculation, where the ALJ states:

> Similarly, a physical examination in September, 2007, revealed the claimant's muscle strength as 5/5 in both upper and lower extremities.  (Exhibit 16F/3).  The claimant brachial, biceps tendon, and patellar reflexes were all 2+.  (Exhibit 16F/3).  The claimant sensation was intact to temperature, cotton, sharp, and soft touch.  (Exhibit 16F/3).  Motor examination of the lower extremities was 5/5 bilaterally. (Exhibit 16F/3).

(Tr. 17.)

therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[7]

## VII. Decision

The Court hereby recommends that May's Motion to Remand based on sentence six of 42 U.S.C. § 405(g) be denied. (Doc. No. 16.) For the foregoing reasons, the Court finds the decision of the Commissioner is not supported by substantial evidence. Accordingly, the decision of the Commissioner should be vacated and the case remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

                                                                       s/ Greg White
                                                                     United States Magistrate Judge

Date:    June 1, 2011

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[7]Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).